UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY DOUGLAS | CIVIL ACTION |
| VERSUS | NO. 18-5529 |
| CHEM CARRIERS TOWING, LLC | SECTION "R" (3) |

## **ORDER AND REASONS**

Before the Court is the motion for partial summary judgment from defendant Chem Carriers Towing, LLC ("Chem Carriers"), to dismiss plaintiff Anthony Douglas's Jones Act negligence and general maritime unseaworthiness claims.[1] Because the Court finds that no disputed issues of material fact exist and the law supports the defendant's position, the Court grants the motion.

## **I.   BACKGROUND**

This case arises from a slip and fall on a boat.[2] On November 1, 2017, Douglas was serving, under the employ of Chem Carriers, as the captain and pilot of the M/V MISS DANIELLE, an inland pushboat.[3] While on the ship,

---

[1]   R. Doc. 21.
[2]   *See* R. Doc. 21-2 at 2 ¶ 10, 4 ¶ 27.
[3]   *Id.* at 1 ¶ 1, 2 ¶ 10.

Douglas suffered an injury exiting the shower.[4] Specifically, his right foot caught on the shower's threshold as he was stepping over it.[5] The interior threshold is 9.5 inches high.[6] The shower has no grab bars,[7] and the tile floor is not covered by a mat.[8] The vessel was docked and tied up at the time of the accident.[9]

Douglas brings claims under the Jones Act, 46 U.S.C. § 30104, general maritime law's warranty of seaworthiness, and general maritime law's doctrine of maintenance and cure.[10] Specifically, he argues that his employer was negligent by providing a shower that amounted to an unsafe condition, which caused his accident.[11] He also argues that his employer's failure to allow him sufficient rest caused him to be fatigued, which contributed to his injury.[12]

---

[4] *Id.* 2 ¶ 10.
[5] *Id.* at 4 ¶ 27.
[6] *Id.* at 2 ¶ 16.
[7] R. Doc. 44-2 at 3:1-3.
[8] *Id.* at 4:2-10.
[9] R. Doc. 21-2 at 3 ¶ 25.
[10] R. Doc. 8 at 1 ¶ 1.
[11] *See, e.g.*, R. Doc. 36 at 15-16.
[12] *See, e.g.*, *id.* at 16.

Chem Carriers now moves for partial summary judgment on Douglas's negligence claim under the Jones Act and unseaworthiness claim under general maritime law.[13] Douglas opposes the motion.[14]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[13] R. Doc. 21.
[14] R. Doc. 36.

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

4

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III. DISCUSSION

Chem Carriers moves for summary judgment in its favor on two of Douglas's claims: (a) his negligence claim under the Jones Act and (b) his unseaworthiness claim under general maritime law.[15] The Court grants summary judgment on both claims for Chem Carriers.

Plaintiff first asserts a negligence claim under the Jones Act, 46 U.S.C. § 30104.[16] The Jones Act affords a remedy to a "seaman injured in the course of employment." 46 U.S.C. § 30104; *see also Chandris, Inc. v. Latsis*, 515

---

15    R. Doc. 21.
16    R. Doc. 8 at 1 ¶ 1.

5

U.S. 347, 354 (1995). A Jones Act employer has a "duty to provide a safe place for the seaman to work." *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989). Consequently, "[a] seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). But the Jones Act does not impose upon "employers a higher duty of care than that required under ordinary negligence"; the standard of care is that of a reasonable person under the circumstances. *Id.* at 339.

Additionally, "the employer must have notice and the opportunity to correct an unsafe condition before liability attaches." *Colburn*, 883 F.2d at 374. And shipowners do not have a responsibility to warn seamen of "open and obvious" dangers. *See Patterson v. Allseas USA, Inc.*, 137 F. App'x 633, 637 (5th Cir. 2005). Nevertheless, a seaman's burden to prove causation between his employer's negligence and his injury is "very light." *O'Neill v. Seariver Mar., Inc.*, 246 F. App'x 278, 280 (5th Cir. 2007) (quoting *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 548 (5th Cir. 1987)).

Plaintiff also asserts a cause of action for unseaworthiness under general maritime law.[17] "A shipowner has an absolute nondelegable duty to provide a seaworthy vessel." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th

---

17 *Id.*

6

Cir. 1991). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001).

Additionally, to recover under a theory of unseaworthiness, "the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* at 527. The standard of causation for an unseaworthiness claim is "more demanding" than the Jones Act standard, "and requires proof of proximate cause." *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982). To show proximate cause, "a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Brister*, 946 F.2d at 355 (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)).

The plaintiff broadly contends that the defendant bears liability for two reasons: (1) the shower on the MISS DANIELLE was unsafe, and (2) the

plaintiff was suffering from fatigue attributable to the defendant's actions.[18] The Court will address each argument in turn.

### A. The MISS DANIELLE's Shower

The plaintiff contends that the MISS DANIELLE was not reasonably safe as a consequence of the shower's threshold, lack of grab bars, and flooring.[19] The Court finds, though, that construing the facts in the plaintiff's favor, no genuine issues of material fact exist with regard to the shower's safety that would support the plaintiff's claim. The shower is reasonably safe for use by a seaman, and the plaintiff does not have a basis either for contending that the defendant was negligent or that the defendant provided an unseaworthy vessel.[20]

The plaintiff presents no admissible evidence to substantiate his conclusion that the design of the shower is unsafe. The Court has excluded the opinion of the plaintiff's expert under a separate order.[21] Neither the plaintiff nor his excluded expert identified any applicable regulations or standards that apply to an uninspected towing vessel—or if so, that apply

---

[18] *See, e.g.*, R. Doc. 36 at 15-16.
[19] *See id.*
[20] *See, e.g., id.* at 12 (summarizing the plaintiff's argument as "Chem Carriers is liable under both the Jones Act and for the unseaworthiness of the MISS DANIELLE due to the unsafe conditions of the shower which caused Douglas' injuries" (emphasis removed)).
[21] *See* R. Doc. 73.

8

specifically to the design of a shower—which might substantiate the plaintiff's claim.[22]

For instance, the plaintiff's expert contended that the defendant violated regulations established by the Americans with Disabilities Act (ADA).[23] But the Court has neither been furnished with nor independently discovered authority that the ADA applies to the design of this shower. Similarly, the plaintiff's expert contended that the defendant violated regulations established by the Occupational Safety and Health Administration (OSHA).[24] Although OSHA regulations do apply to uninspected vessels in the absence of displacing Coast Guard regulations, *see Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235, 243-45 (2002), these regulations do not govern the shower features that the plaintiff points to as being unsafe—that is, the threshold height, tile floor, and absence of grab bars.[25] Specifically, OSHA regulations classify a "room used for . . .

---

[22] *See id.* at 8-12.
[23] *See id.* at 10-11. The plaintiff also has not suggested that he had a disability before the incident.
[24] *See id.* at 11-12.
[25] *See* R. Doc. 36 at 15-16. The majority of the OSHA regulations that the plaintiff's expert cites apply to "accident prevention signs." *See, e.g.*, R. Doc. 33-5 at 30-32; *see also* 29 C.F.R. § 1910.145. But the plaintiff agrees that the conditions of the shower were open and obvious. *See* R. Doc. 21-4 at 37:13-22. And in the absence of evidence that the design of the shower was unsafe, regulations regarding accident preventions signs are irrelevant.

showering" as a "[p]ersonal service room,"[26] but do not provide relevant specifications for the design of a shower in such a personal service room. Regulations for "workroom[s]"[27] and "[w]alking-working surfaces"[28]—on which the plaintiff's expert relies—are not applicable.

Other expert evidence shows that the shower was not reasonably unsafe. Specifically, the defendant provides evidence from Joseph Rodriguez, a shipbuilder who constructed about 300 vessels,[29] including the MISS DANIELLE.[30] The MISS DANIELLE was newly constructed in 2013.[31] Mr. Rodriguez attests that "[t]he shower on the M/V MISS DANIELLE is a standard shower,"[32] reflecting a design Mr. Rodriguez has replicated "on approximately 100 vessels, for 50 to 60 different customers."[33] Yet Mr. Rodriguez has "never received any complaints from anyone that this shower design is unsafe; defective; should be modified; that the thresholds are too high; or that the flooring is unsafe."[34] Indeed, Mr. Rodriguez has "installed this same design on at least one (1) vessel which was inspected, certified and

---

[26] *See* 29 C.F.R. § 1910.141(a)(2); *see also* R. Doc. 33-5 at 30
[27] *See* 29 C.F.R. § 1910.141(a)(3)(ii); *see also* R. Doc. 33-5 at 30.
[28] *See* 29 C.F.R. § 1910.22(a)(3); *see also, e.g.*, R. Doc. 33-5 at 30.
[29] *See* R. Doc. 21-12 at 1 ¶ 4.
[30] *See id.* at 1 ¶ 6.
[31] *See id.*
[32] *Id.* at 2 ¶ 12.
[33] *Id.* at 2 ¶ 9.
[34] *Id.* at 2 ¶ 10.

approved by both the American Bureau of Shipping and the United States Coast Guard."[35]

Even disregarding the defendant's expert, the plaintiff's lay testimony has not raised a triable issue that the shower is hazardous. The plaintiff's brief identifies three design characteristics that he argues make the shower unsafe: (1) the shower threshold was too high, (2) the shower lacked a grab bar, and (3) the flooring in the shower was slippery.[36]

First, construing the facts in the light most favorable to the plaintiff, there is no triable issue as to whether the shower was reasonably a safety risk because the threshold was too high. The plaintiff acknowledged that if any risk existed, it was open and obvious,[37] which does not require a warning from a Jones Act employer. *See Patterson*, 137 F. App'x at 637. Furthermore, the evidence would not support a jury's finding that a risk actually did exist. A threshold less than a foot in height is not so high that, in light of common experience, one would not expect to be able to step over it. Indeed, Douglas had previously used the shower on the MISS DANIELLE twice before without incident.[38] Others had also used the shower without a problem.[39]

---

[35] *Id.* at 2 ¶ 12.
[36] *See, e.g.*, R. Doc. 36 at 15-16.
[37] *See* R. Doc. 21-4 at 37:13-22.
[38] *See id.* at 14:1-10.
[39] *See* R. Doc. 21-9 at 4:4-6.

11

The plaintiff cited no systematically collected data or study on accidents due to vessel shower threshold heights that would support his argument. And while Douglas may have worked on ships with lower thresholds,[40] the existence of lower thresholds on some ships does not mean that the MISS DANIELLE's 9.5-inch threshold was unsafe.[41]

Additionally, even if these lower thresholds effectively held back water, as the plaintiff suggests,[42] there is no reason why the maximum safe height must equate to the minimum functional height. The plaintiff does not, for instance, provide a biomechanical or technical analysis to substantiate his claim that the MISS DANIELLE's threshold proved hazardous to step over. To the contrary, the evidence suggests that no one had previously complained to the defendant about the shower.[43] Indeed, the MISS DANIELLE's shipbuilder has used the same design on about 100 boats across about fifty customers, without a single complaint.[44] Indeed, he had installed the same shower on a boat "inspected, certified and approved by

---

[40] *See* R. Doc. 36-4 at 2 ¶¶ 7-8.
[41] In fact, it does not even establish that the MISS DANIELLE's threshold was an outlier compared to all the ships the plaintiff had encountered in his more than thirty years working on boats. *See* R. Doc. 21-4 at 3:25, 4:1-5.
[42] *See* R. Doc. 36-1 at 1 ¶ 3. Mr. Rodriguez indicates that his shower thresholds normally are a minimum of twelve inches high in order "to keep the water inside the shower." *See* R. Doc. 56-1 at 20:3-25.
[43] *See, e.g.*, R. Doc. 21-7 at 3:9-19.
[44] *See* R. Doc. 21-12 at 2 ¶¶ 9-10.

both the American Bureau of Shipping and the United States Coast Guard."[45] Consequently, the plaintiff has provided no limiting principle to explain at what height a threshold becomes unsafe—other than to state that since he tripped over the current threshold, it is too high. The occurrence of an unfortunate accident, though, does not alone create a triable issue of fact.

Second, construing the facts in the light most favorable to the plaintiff, the evidence adduced does not support a finding that the shower was unsafe because it lacked a grab bar. The plaintiff cites no applicable regulations requiring grab bars for showers in vessels of this type.[46] And though the shower does not have grab bars, the sides of the shower themselves provide a surface that one can hold while entering or exiting the shower,[47] and others had used them for this purpose.[48] The plaintiff himself had previously used the side of the shower to "stabilize" himself.[49] Indeed, when the plaintiff tripped, he successfully "grabbed . . . the side of the shower to stop from falling."[50] The evidence also indicates that the boat was not in high seas or subject to waves from passing vessels at the time of the incident.[51] Rather it

---

[45] *See id.* at 2 ¶ 12.
[46] *See* R. Doc. 73 at 8-12.
[47] *See, e.g.*, R. Doc. 21-5.
[48] *See* R. Doc. 44-2 at 7:14-23.
[49] *See* R. Doc. 21-4 at 21:11-25, 22:1-7.
[50] R. Doc. 44-1 at 9:9-11.
[51] *See* R. Doc. 21-4 at 26:24-25, 27:1-3.

was tied up and docked.[52] Further, there have been no previous complaints about the absence of a grab bar on this vessel[53] or on any of the other vessels of the same design furnished by the same shipbuilder.[54] The record as a whole, therefore, reveals that no rational trier of fact would find a genuine dispute over whether the absence of grab bars caused the plaintiff's incident.

Third, the evidence adduced does not create a triable issue that the shower was unsafe because of the slipperiness of the floor. Even construing the facts in the light most favorable to the plaintiff, the plaintiff's slip did not occur due to the shower's tile. Indeed, the plaintiff explicitly stated that there were not any problems with the shower's tile.[55] Furthermore, the evidence suggests that such tile, although not omnipresent, is not uncommon in boat showers.[56] The floor was covered in ceramic tile squares that were smaller in scale than the tile on the shower wall and the floor outside the shower.[57] The plaintiff cites no regulations or standard prohibiting vessels of this type from having tile floors or requiring mats in showers.

---

[52] *See id.* at 27:16-24.
[53] *See* R. Doc. 21-9 at 5:11-15.
[54] R. Doc. 21-12 at 2 ¶ 10
[55] *See* R. Doc. 44-1 at 10:19-25.
[56] *See, e.g.*, R. Doc. 36-10 at 3:2-15; R. Doc. 36-12 at 5:1-4.
[57] *See* R. Doc. 21-5; R. Doc. 21-6.

The Court does note that the shipbuilder who constructed the MISS DANIELLE has previously used "paint chip flooring" on other ships,[58] whereas the MISS DANIELLE's owner installed tiles in the shower.[59] But the shipbuilder attributed his use of paint-chip flooring to aesthetics, not because it created a nonslip surface.[60] And the defendant never received any complaints about the tile it used in the bathroom of the MISS DANIELLE.[61] Taken in conjunction, this evidence does not establish a triable issue of fact about the shower's flooring. Overall, therefore, the plaintiff has not presented a genuine issue of fact—other than the plaintiff's unsupported contention that an accident occurred and unsafe circumstances caused this accident—that supports his claim.

Given this factual matrix, case law from the Fifth Circuit strongly supports the Court's granting the motion for summary judgment. The most on-point authority is *Jackson v. OMI Corp.*, 245 F.3d 525 (5th Cir. 2001). In *Jackson*, the Fifth Circuit overturned a district court's finding as clearly erroneous when the lower court concluded that a doorway's lack of a handhold established negligence and an unseaworthy condition. *See id.* at

---

[58] *See* R. Doc. 54-2 at 5:8-20.
[59] *See id.* at 8:18-25, 9:1-11.
[60] *See id.* at 6:1-12.
[61] *See* R. Doc. 21-7 at 3:9-12.

15

528. Specifically, the Fifth Circuit found that a 17.75-inch coaming in a doorway did not create liability—indeed, regulations required at least 15 inches. *See id.* Here, the threshold of the shower is even shorter—nearly half the height of that in *Jackson*.[62] Furthermore, in *Jackson*, the lack of a grab bar in the doorway also did not justify a finding for the plaintiff, because a person could use the side of the door as support. *See id.* Similarly here, the sides of the shower provide steadying points.[63] Finally, the *Jackson* court found that "[a]ll the evidence, including [the plaintiff's] own testimony, points to the conclusion that [the plaintiff] simply tripped over the coaming." *Id.* Likewise here, the plaintiff himself acknowledges that the accident arose when his foot caught on the threshold.[64] *Jackson* indicates, therefore, that this Court should grant summary judgment.

The Court acknowledges that a handful of non-binding opinions have allowed a case to proceed past summary judgment when an accident occurred in a vessel's shower. In *Myers v. Hercules Offshore Services, LLC*, No. 13-4870, 2014 WL 2046072, at *3 (E.D. La. May 16, 2014), for instance, Judge Lemmon found summary judgment inappropriate when the plaintiff

---

[62] *See* R. Doc. 21-2 at 2 ¶ 16.
[63] *See* R. Doc. 21-4 at 21:11-25, 22:1-7.
[64] *See, e.g., id.* at 30:14-16 ("[M]y foot hung up, and I went to fall out and I grabbed myself.").

fell while showering. *See id.* at *1-3. Ultimately, though, Judge Lemmon concluded that the vessel was "not unseaworthy for lacking handrails or mats in the shower," and that "[t]here are no regulations or other requirements that such a vessel have handrails in the shower." *Myers v. Hercules Offshore Servs., LLC*, No. 13-4870, 2014 WL 5324974, at *3 (E.D. La. Oct. 17, 2014), *aff'd*, 626 F. App'x 497 (5th Cir. 2015). Likewise, the older cases *Welch v. J. Ray McDermott & Co.*, 336 F. Supp. 383 (E.D. La. 1972), and *Krey v. United States*, 123 F.2d 1008 (2d Cir. 1941), which "found that ocean-going vessels were unseaworthy for failing to have handrails or mats," *Myers*, 2014 WL 5324974, at *3, do not control this Court's assessment of an inland pushboat,[65] tied and docked.[66] Overall, therefore, the plaintiff has not presented facts or law sufficient to establish a genuine issue of material fact with regard to the shower's safety.

### B. The Plaintiff's Fatigue

In addition to his arguments that the design of the shower contributed to the incident, the plaintiff also alleges that his fatigue—attributable to the defendant's actions—caused the accident.[67] The Court finds, though, that

---

[65] *See* R. Doc. 21-2 at 2 ¶ 10.
[66] *See* R. Doc. 21-4 at 27:16-24.
[67] *See, e.g.*, R. Doc. 36 at 16.

17

construing the facts in the plaintiff's favor, no genuine issues of material fact exist with regard to the plaintiff's fatigue that would support his claim.

As an initial matter, the plaintiff himself has never suggested that he felt fatigued, or that any fatigue caused his accident. He did not note being fatigued when he reported the accident to Chem Carriers,[68] or when he visited a nurse after the accident.[69] Similarly, the plaintiff points to no medical record where he reported being fatigued. Indeed, he was deposed in the proceeding and did not cite being fatigued as contributing to his fall.[70] Although the plaintiff asserts that he was told to travel to the place of his next assignment following the end of his shift,[71] he also stated that he was not in a rush to leave the boat.[72] In combination, these statements do not equate to the plaintiff's claiming he suffered from fatigue. Rather, as the plaintiff himself explained during his deposition, the accident occurred because his "foot hung up" on a 9.5-inch shower threshold.[73]

---

[68] *See* R. Doc. 33-8.
[69] *See, e.g.*, R. Doc. 21-11.
[70] *See, e.g.*, R. Doc. 33-2 at 8:3-13 ("Q. You claim an accident. I'm trying to find out what you claim Chem Carriers did to cause or contribute to your accident. You've stated the design of the boat and you said the threshold was too high. A. Yes. Q. Was there anything that you felt was wrong with the boat or that Chem Carriers did that caused or contributed to your alleged accident? A. No.").
[71] *See, e.g.*, R. Doc. 36-4 at 1 ¶¶ 3-4.
[72] *See* R. Doc. 44-1 at 5:7-9.
[73] *See* R. Doc. 21-4 at 30:14-15.

The plaintiff proffered an expert who claims that the plaintiff worked longer than permitted by the Coast Guard's "twelve-hour rule," *see* 46 U.S.C. § 8104(h), and ergo was fatigued.[74] That opinion has been excluded.[75] The interpretation of the applicable statute is a matter for the Court. The statute provides that "an individual licensed to operate a towing vessel may not work for more than 12 hours in a consecutive 24-hour period except in an emergency." *Id.* The Court does not read this rule, as a general matter, to suggest that an employer cannot allow a seaman to shower following a twelve-hour shift without creating an unreasonably unsafe condition. And in the context of this specific case, no evidence exists that the plaintiff's work caused him to suffer fatigue to such an extent that an able-bodied seaman would be impeded from lifting his foot 9.5 inches over an open and obvious shower threshold. Overall, therefore, no triable issue of fact exists with regard to the plaintiff's fatigue.

---

[74] *See* R. Doc. 73 at 12.
[75] *See id.* at 12-14.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendant's partial motion for summary judgment.

New Orleans, Louisiana, this __23rd__ day of August, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE